Gaston, J.
 

 As the cause is before us to be heard upon the pleadings and proofs, it is not necessary to express an opinion upon the regularity or propriety of the injunction, which was granted upon the filing of the bill and continued until the hearing, to forbid the sheriff from selling the slave under legal process. But it may not be amiss to suggest, that, according to the rules of a Court of Equity, an injunction to restrain proceeding with an execuction is a mandate to the creditor, not to the officer, and the person to be restrained thereby should be made a party to the proceedings.
 

 We see no ground for a decree that the slave shall be li. able for the payment of the bond given ^to secure the purchase money. In England, where the lien of a vendor for the unpaid purchase money is carried very far, we are not aware that such a lien is recognized in the case of the sale of a chattel; and, still less, that it exists in favor of a surety, who fears that he may be compelled to pay the price.
 

 But we hold that the plaintiff is entitled to relief, upon the proofs that the defendant Clark purchased for him and as his agent. It is unnecessary to go through the evidence minutely. One fact is established by the testimony of a number of witnesses, in direct opposition to the answer of Clark, that there was a previous agreement that he should buy for the plaintiff. It is proved by them, that, when charged by the plaintiff, as soon as the difficulty arose, that he had bid and bought as the plaintiff’s agent, he admitted the truth of the allegation. Besides this, one witness (Well-man) declares that he was present with the parties when it
 
 *63
 
 was agreed thatClarkshould bid for the plaintiff asfaras $300; that, after that sum had been bid, Clark applied to the plaintiff to know whether he might bid more; that he was told he might bid as far as ten or twenty dollars more; and therefore he bid five cents more and was declared the highest bidder. It may be, that be was to receive some price or compensation for performing this agency, bnt there is no such allegation, nor, if there were, is there any proof to sustain it. We are satisfied, also, upon the testimony, that, after the executions were levied and Clark insisted on claiming the negro, the plaintiff did endeavor to make the arrangement set forth in the answers. But this fact is not inconsistent with the averment, that the purchase had been made by Clark as bis agent. It is in proof that Clark was insolvent. The purchase had been ostensibly made by him, and he having taken possession of the slave as his property, it was not extraordinary that the plaintiff, who had joined in the bond, should be willling to make some sacrifice to obtain the possession of the slave and to be qnieted in his title. It is also proved, that when the proposed arrangement had failed, the plaintiff did declare, that he would forego his claim and run the risk of being- compelled to pay the bond ; and if, upon the fakir of this declaration, any person had bought from Clark, we should not allow the plaintiff to enforce his equitable title against sueh purchaser. But no such purchase was made, nor is any title set op, adverse to that of the plaintiff, except the title of his trustee, and this bill was filed to enforce the plaintiff’s claim within a few weeks after the transaction.
 

 It does not appear, whether the bond for the purchase money has been paid or not, nor by whom the slave has been held since the filing of the bill, While we declare, therefore, that the slave was purchased by the defendant Clark, as the agent of the plaintiff, it mtrst be referred to the elerlc of the Court to enquire and report, whether the purchase money has been paid, and, if so, by whpm — what is the value of the hire or services of the slave, since he has been with
 
 *64
 
 held from the plaintiff — and who has received the benefit of such hire or services.
 

 Per Curiam, Reference ordered accordingly.